UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. 1:22-cv-00133 |
| | ) |
| $58,209.00 UNITED STATES CURRENCY, | ) |
| | ) |
| Defendant. | ) |

**COMPLAINT OF FORFEITURE IN REM**

The United States of America, by counsel, Zachary A. Myers, United States Attorney for the Southern District of Indiana, and Kelly Rota, Assistant United States Attorney, alleges as follows:

NATURE OF THE ACTION

1. The United States of America (the "United States") has commenced this action pursuant to the civil forfeiture provisions of 21 U.S.C. § 881 and 18 U.S.C. § 981(a), seeking forfeiture of the Defendant property based on violations of 21 U.S.C. § 801 *et seq*;

JURISDICTION, AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1345 (district courts have original jurisdiction of all civil actions commenced by the United States) and § 1355 (district courts have original jurisdiction of any action for forfeiture).

3. This Court has in rem jurisdiction over the Defendant Property pursuant to 28 U.S.C. § 1355(b) (forfeiture action can be brought in district in which any of the acts giving rise to the forfeiture occurred), and Rule G(3)(b)(i) of the Supplemental Rules for Admiralty or

Maritime Claims and Asset Forfeiture Actions (clerk must issue a warrant to arrest property in the government's possession).

4. This Court is the appropriate venue in this matter pursuant to 21 U.S.C. § 881(j) and 28 U.S.C. § 1395, in that the forfeiture occurred in the Southern District of Indiana, and the Defendant Property is now, and during the pendency of this action will be, found within the Southern District of Indiana.

## DEFENDANT PROPERTY

5. The Defendant Property is Fifty-Eight Thousand, Two Hundred and Nine Dollars in United States Currency ($58,209.00) seized by the United States Department of Homeland Security, Homeland Security Investigations ("DHS-HSI" or "HSI"), on September 20, 2021.

6. The Defendant Currency has been assigned Asset Identification Number 21-CBP-000569 and has been transferred to the United States Department of Homeland Security, Customs and Border Protection ("DHS-CBP").

## FACTUAL BASIS FOR FORFEITURE

7. On September 20, 2021, Jerry Bond was a passenger at Indianapolis International Airport with a scheduled flight to Atlanta, Georgia via Delta Airlines. During a routine screening at the security checkpoint, Transportation Security Administration ("TSA") personnel were alerted to Bond's carry-on luggage as being suspicious, which prompted TSA personnel to open and inspect it. TSA personnel located a large amount of cash enclosed in a trash bag that contained two vacuum-sealed plastic bags inside the carry-on luggage. TSA personnel contacted members of the Indianapolis Circle City Task Force, which consists of federal, state, and local law enforcement who conduct interdiction investigations at the airport.

8. A criminal history search for Bond revealed an extensive record in Indiana,

Georgia, Tennessee, and Michigan, with numerous arrests and convictions for drug-related offenses, including the possession and distribution of marijuana. Bond also has arrests for making false statements to government officials and fraud.

9. HSI Task Force Officer Kyle Freeman, and Plainfield Officer Mike Standiford located Bond near gate A6. Officer Standiford, who works with a drug detection canine, deployed his canine partner, Axel, for a free sniff of passengers who were seated near gate A6. Axel alerted to the odor to Bond's carry-on bag that was sitting on the ground in front of Bond, indicating the odor of a narcotic or controlled substance. TFO Freeman then approached Bond identified himself as law enforcement and asked to speak with Bond. Bond consented, and they moved to another location away from the gate. Bond identified himself using a Georgia driver's license. TFO Freemen detected an odor of marijuana on Bond, and Bond told the investigator that he had smoked marijuana.

10. TFO Freeman asked Bond if they could search his bag, and Bond consented to the search. In Bond's carry-on bag, Officer Standiford located two vacuum-sealed plastic bags, inside a black trash bag containing cash. On one package, the number "27" was written and, on the other "30" was written – which appeared to indicate the amount of cash inside. Officer Standiford also located visually and smelled laundry air fresheners packed with the money. Both the packaging of the money and the air fresheners are consistent ways for individuals to package cash from drug proceeds to conceal it and avoid detection from law enforcement.

11. Officer Standiford then searched Bond's satchel. He located a large amount of loose cash. In Bond's wallet, he found what appeared to be a falsified a South Carolina driver's license with Bond's picture and the name Joel Hardee, DOB, 07/04/1983. False identification also is indicative of individuals involved in criminal activity.



12.     The Defendant Currency was in the sum of $58,209.00 in the following denominations:

| Denomination | Count | Amount |
|---:|---:|---:|
| $1 | 4 | $4.00 |
| $5 | 87 | $435.00 |
| $10 | 110 | $1,100.00 |

| | | | |
|---|---|---|---|
| | $20 | 2,231 | $44,620.00 |
| | $50 | 87 | $4,350.00 |
| | $100 | 77 | $7,700.00 |
| | **TOTAL** | | **$58,209.00** |

13.     Bond stated that he was in Indianapolis last week for his sister's birthday party, and that he kept cash at this mother's house. He told investigators that he routinely keeps his money in vacuum-sealed bags.   TFO Freeman asked for his mother's telephone number to verify these facts, but Bond did not produce the number.   Bond then stated that the money was from the sale of a 1970 Chevelle, and that he buys and sells vehicles for drag racing.   However, he could not produce any records or photographs of this vehicle or provide any details about the vehicle to corroborate his statement. Bond then declined to provide the agents any further information regarding the currency.

14.     Based on the amount of cash, the way it was packaged and concealed inside of Bond's carry-on and satchel, Bond's criminal history involving controlled substances, and his inability to explain why he was traveling with such a large amount of cash, investigators believed there was probable cause that the Defendant Property was proceeds of or property used to facilitate a controlled substance offense, or was property involved in a money laundering transaction.   As a result, HSI seized the Defendant Property.

15.     Just eight months prior to this seizure, Bond had money seized from him as the result of a traffic stop on Interstate 65.   This office filed a civil forfeiture in rem complaint, *United States v. $72,850.00,* Cause Number 4:21-cv-00130-JMS-DML on August 20, 2021.   In this instance, Bond was traveling on January 13, 2021 on Interstate 65 Southbound at mile-

marker 16 in Memphis, Indiana.   Bond was stopped for making three unsafe lane movements. The officer who stopped Bond noticed a strong odor of marijuana emitting from the vehicle. Bond admitted to having a gram of marijuana in the console of the vehicle.   The officers conducted a probable cause search.   Bond told officers he had about $50,000.00 in the car from selling a Chevrolet Chevelle.   Bond was traveling with $72,850.00 at the time of this stop.   The cash is this instance was packaged similarly   to the packaging of the $58,209.00 in the current seizure.

## ADMINISTRATIVE FORFEITURE PROCEEDINGS

16.    DHS-CBP mailed a timely notice of seizure to Bond, notifying him of the agency's intent to pursue administrative forfeiture of the Defendant Currency.   The notice gave Bond the options to file a petition for administrative reconsideration, submit an offer in compromise, abandon the property, or file a claim requesting referral for court proceedings.

17.    On October 20, 2021, DHS-CBP received a timely claim from Bond, through counsel.

18.    No other claims or petitions were received for the Defendant Property.   After the time for filing claims and petitions administratively expired, DHS-CBP referred the matter to the United States Attorney for review.

## PERTINENT STATUTES AND REGULATIONS

19.    Under 21 U.S.C. § 841(a)(1), it shall be unlawful for any person to knowingly or intentionally manufacture, distribute, or dispense a controlled substance; or…to possess with intent to distribute or dispense a controlled substance.

20.    Marijuana is a Schedule I controlled substance. *See* 21 U.S.C. § 812(c); 21 C.F.R. § 1308.11 (d)(23).

21. Pursuant to U.S.C. § 881(a)(6), the Defendant Property is subject to forfeiture because it constitutes: (1) money, furnished or intended to be furnished in exchange for a controlled substance in violation of the Controlled Substance Act, 21 U.S.C. § 841 and 846; (2) proceeds traceable to such an exchange; and (3) money intended to be used to facilitate any violation of the Controlled Substance Act.

## PRAYER FOR RELIEF

22. Plaintiff United States repeats and incorporates by reference the paragraphs above.

23. By the foregoing and other acts, the Defendant Property constitutes money furnished or intended to be furnished in exchange for a controlled substance, proceeds traceable to such an exchange and/or money used of intended to be used to facilitate a violation of 21 U.S.C. § 801 *et seq*., and therefore is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, the United States prays that the Clerk of the Court issue a warrant for the arrest of the Defendant Property pursuant to Rule G(3)(b)(i) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the Defendant Property be forfeited to the United States for disposition according to law; and that the Court enter a finding of reasonable cause for the seizure and issue a Certificate of Reasonable Cause pursuant to 28 U.S.C. § 2465.

                    Respectfully submitted,

                    Zachary A. Myers
                    United States Attorney

By:    *s/Kelly Rota*
                    Kelly Rota
                    Assistant United States Attorney
                    Office of the United States Attorney
                    10 W. Market St., Suite 2100
                    Indianapolis, Indiana 46204-3048
                    Telephone: (317) 226-6333

## **VERIFICATION**

I, Daron Babcock, being duly sworn, depose and say:

1.      I am an investigative or law enforcement officer within the meaning of Section 2510(7) of Title 18, United States Code, that is an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

2.      I have been employed by the United States Immigration and Customs Enforcement ("ICE"), and its predecessor, the United States Customs Service ("USCS") since June 2001.  Prior to starting my federal law enforcement career, I was employed as a police patrol officer with the Tacoma Police Department from December 1996 through April 2001. I also worked briefly for the California Department of Justice prior to being hired by the USCS.  I am currently assigned as the Resident Agent in Charge with the ICE, Homeland Security Investigations ("HSI") office in Indianapolis, Indiana, and have been so assigned since March 2020.

3.      In addition to my official managerial duties, which includes the supervision of Special Agents and Task Force Officers assigned to the HSI Indianapolis Circle City Task Force, I investigate criminal violations of the federal narcotics laws, including, but not limited to, Title 21, United States Code, Sections 841, 843, 846, 848, 952 and 963.  I also investigate violations of the federal money laundering and bulk cash smuggling laws, including, but not limited to, Title 18, United States Code, Sections 1956 and 1957, and Title 31, Section 5332.  I have received special training in the enforcement of laws concerning controlled substances as found in Title 21 of the United States Code.

4.      I have received training in investigations involving individuals smuggling,

transporting, and distributing illegal narcotics. I am familiar with the ways in which drug traffickers conduct their business, including, but not limited to, their methods of importing and distributing controlled substances, their utilization of stash houses and other storage facilities, their use of telephones and digital display paging devices, and their use of numerical codes and code words to conduct their transactions.

5. I have also received training in money laundering and bulk cash smuggling techniques utilized by drug trafficking organizations to launder, conceal, and transport illicit financial proceeds related to narcotics crimes throughout the United States and across international borders. I am familiar with the ways in which drug trafficking organizations transport their proceeds, including, but not limited to, their methods of collecting and transporting bulk currency, their use of passenger and commercial vehicles (e.g. airplanes, bus lines, parcel delivery companies, and semi-trucks) for concealment, their use of currency "mules" and handlers to avoid law enforcement detection, their use of stash houses and other storage facilities, and their use of sophisticated compartments and cross-border smuggling techniques. The training described above was conducted at the Federal Law Enforcement Training Center in Glynco, GA during the Criminal Investigator Training Program and the Customs Basic Enforcement School as well as the DEA's Operation JETWAY interdiction training program conducted in Seattle, WA and Columbus, OH.

6. In addition to the above training, I have conducted and participated in multiple investigations with HSI that have resulted in the seizure of hundreds of kilograms of heroin, cocaine, and methamphetamine, as well as thousands of pounds of marijuana and in excess of $6 million dollars in United States Currency. I am familiar with and have participated in all of the normal methods of investigation, including but not limited to, visual surveillance, controlled

deliveries, undercover buys, execution of search and arrest warrants, management and use of informants, pen registers, and Title III investigations. I also have been involved in various types of electronic surveillance, and in the debriefing of defendants, witnesses, and informants, as well as others who have knowledge of the distribution and transportation of controlled substances, and of the laundering and concealing of proceeds from drug trafficking offenses.

7. Narcotics trafficking organizations often amass large sums of currency from their narcotics trafficking and other related criminal activities. The individuals engaged in these illegal activities will attempt to "launder" their illegal profits; which is an attempt to make the illegal profits appear to be from legitimate, or legal, sources to prevent prosecution, avoid seizure and forfeiture of their ill-gotten gains, and to evade tax liabilities.

8. I know the distribution, manufacture, and sale of illegal narcotics is a violation of the Controlled Substances Act and is, therefore, a Specified Unlawful Activity (SUA) according to 18 U.S.C. § 1956(c)(7)(A) and 18 U.S.C. § 1961(1).

9. I have read the foregoing Verified Complaint In Rem and know the contents thereof, and that the matters contained in the Complaint are true to my own knowledge, except that those matters herein stated to be alleged on information and belief, and as to those matters I believe to be true.

10. The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement offices, as well as my investigation of this case, together with others, as a supervisory criminal investigator with HSI.

I hereby verify and declare under penalty of perjury that the foregoing information provided on pages 1 through 8 is true and correct.

Dated: 01-18-22

_____
Daron Babcock, Resident Agent in Charge
U.S. Immigration and Customs Enforcement
Homeland Security Investigations

## CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2022, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

I further hereby certify that on January 18, 2022, a copy of the foregoing document was mailed via United States Mail to:

Jerry Bond
7100 Oakley Ct.
Union City, GA 30291

Stephen Gray
2925 Senour Road
Indianapolis, Indiana 46239

ZACHARY A. MYERS
United States Attorney

By:   *s/ Kelly Rota*
Kelly Rota
Assistant United States Attorney
Office of the United States Attorney
10 W. Market St., Suite 2100
Indianapolis, Indiana 46204-3048
Telephone: (317) 226-6333